## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JENNENE STOICESCU, <br> and STEFFAN SPIRES, <br> on behalf of Plaintiffs and the class <br> members described herein, <br><br> Plaintiff, <br><br> v. <br><br> STRATEGIC SOLUTIONS SERVICES, <br> a corporation, doing business as <br> Green Funds Go, GFG, and <br> Rapid Arrow Loans; <br> CONSTANTINE RADIOTIS; <br> FINSANA, LLC; <br> NCR FINANCIAL SERVICES, INC.; <br> and JOHN DOES 1-20, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT – CLASS ACTION

1.     Plaintiffs, Jennene Stoicescu and Steffan Spires, bring this action against Defendants Strategic Solutions Services, a corporation, doing business as Green Funds Go, GFG and Rapid Arrow Loans; Constantine Radiotis; Finsana, LLC; NCR Financial Services, Inc.; and John Does 1-20, to secure redress for usurious and illegal loans (such as Exhibits A-B) made to Illinois residents.

2.     Plaintiffs seek a declaratory judgment that the loans are void (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.* and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III—the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1964 (Counts IV-V).

-1-

## JURISDICTION AND VENUE

3.       The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d), in that the amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs, and in that there are believed to be over 100 members of the class, all of whom are of diverse citizenship to Defendants.

4.       This Court has personal jurisdiction over Defendants because they:

a.       Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b.       Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

5.     Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Indiana.

6.     Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

7.     Plaintiff Jennene Stoicescu is a citizen of Illinois and a resident of Arlington Heights, Illinois.

8.     Plaintiff Stoicescu obtained a loan via the website www.greenfundsgo.com.

9.     Plaintiff Steffan Spires is a citizen of Illinois and a resident of Bloomington, Illinois.

10.     Plaintiff Spires obtained a loan via the website www.rapidarrowloans.com.

11.     Defendant Strategic Solution Services, doing business as Green Funds Go, GFG and Rapid Arrow Loans, is a Delaware limited liability company.  Its registered agent and office is Agents and Corporations, Inc., 1201 Orange Street, Suite 600, Wilmington, Delaware 19801.

12.     Loan documents used by Strategic Solution Services, doing business as Green Funds Go, claim that it is a "Mohawk or First Nations entity, located on the Mohawk Territory of Kahnawake and is subject to the laws of Kahnawake and those of the First Nations of Canada."

13.     Loan documents used by Strategic Solution Services, doing business as Rapid Arrow Loans, claim that it is a "sole Mohawk proprietorship and operates within the Mohawk Community of Kahnawake, which is a federally recognized First Nations entity and enjoys governmental sovereign immunity."

14.     These statements are not true.

-3-

15.     Instead, Strategic Solution Services is engaged in what is often referred to as a "rent-a-tribe" scheme.

16.     In a "rent-a-tribe" scheme, non-tribal payday lenders attempt to circumvent state usury laws by invoking the sovereign immunity available to Native American tribes.

17.     While the non-tribal entities operate all substantive aspects of the business such as funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections for the high-interest loans, the tribe acts as a label or figurehead in exchange for what is often a relatively insignificant portion of the revenue generated.

18.     Strategic Solution Services uses a number of addresses:

   a.     Its loan documents used the address P.O. Box 2009, Kahnawake, Quebec, J0L 1B0 or P.O. Box 466, Kahnawake, Quebec, J0L 1B0.

   b.     Wage assignment demands use the address P.O. Box 959, Wood Dale, Illinois 60191.

19.     At no time has Strategic Solution Services held any type of consumer lending license from the State of Illinois.

20.     Defendant NCR Financial Services, Inc. is a corporation organized under the law of Delaware with a principal place of business of 4480 ch. de la Cote-de-Liesse, Suite 355, Mont-Royal, Quebec, H4N 2R1, Canada. Its registered agent and office is Corpomax, Inc., 2915 Ogletown Road, Newark, Delaware 19713.

21.     Defendant Constantinos Radiotis is the president, secretary, and treasurer of NCR Financial Services, as well as its Director of Operations. He may be found at 4480 Chemin de la Côte-de-Liesse Suite 355, Mount Royal, Quebec H4N 2R1.

22.     Defendant Constantinos Radiotis operates a number of high-interest Internet lenders, of which Strategic Solution Services is one. He operates them through intermediaries such as NCR Financial Services, Inc., and Finsana, LLC.

23.     Defendant Finsana, LLC is a limited liability company organized under Delaware law

-4-

with a principal place of business of 4480 ch. de la Cote-de-Liesse, Suite 355, Mont-Royal, Quebec, H4N 2R1, Canada. Its registered agent and office is Corpomax, Inc., 2915 Ogletown Road, Newark, Delaware 19713.

24. Finsana describes itself as an "emerging global lender that specializes in catering to underserved and underbanked consumers since 2006."

25. Defendant Radiotis is the founder and chairman of Finsana, LLC.

26. Strategic Solution Services is in fact operated by NCR Financial Services and Finsana, LLC, at the direction of Radiotis.

27. John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

## FACTS

## PLAINTIFFS' TRANSACTIONS

28. On March 27, 2023, Plaintiff Jennene Stoicescu obtained a loan from Strategic Solution Services d/b/a Green Funds Go (Exhibit A). The loan was for $1,000 and had an annual percentage rate of 713.38%. The last payment was due on September 15, 2023.

29. Plaintiff Stoicescu made payments on the loan, including interest.

30. The loan agreement (Exhibit A) is a standard form.

31. On June 25, 2024, Plaintiff Steffan Spires obtained a loan from Strategic Solution Services d/b/a Rapid Arrow Loans (Exhibit B). The loan was for $500 and had an annual percentage rate of 711.65%. The last payment was due on December 13, 2024.

32. Plaintiff Spires made payments on the loan, including interest.

33. The loan agreement (Exhibit B) is a standard form.

34. Plaintiffs' loans were made for personal purposes and not for business purposes.

35. The principal amounts were transferred to Plaintiffs' respective bank accounts in Illinois via ACH.

36. The loans were made entirely via the Internet, using the websites

www.greenfundsgo.com and www.rapidarrowloans.com.

37.     The loans were to be repaid via ACH.

38.     Plaintiffs have never set foot on tribal lands.

39.     Loans to Illinois residents made in the same manner as the loans to Plaintiffs are governed by the laws of the State of Illinois.

## DEFENDANTS' OPERATIONS

40.     While Green Funds Go and Rapid Arrow Loans purport to be tribal entities, they are in fact operated by and for the benefit of non-tribal persons and entities.

41.     The actual lending operations were carried out and continue to be carried out in locations other than tribal lands, such as Illinois.

42.     The operations that are not conducted on tribal land include lead generation, marketing, funding, underwriting, payment processing, and collection.

43.     Profits from the lending activities are received by non-Native Americans.

44.     The funds lent are transferred by ACH credit to the borrowers' respective bank accounts throughout the United States.

45.     Repayment of the loans is made by ACH debit from the borrowers' respective bank accounts throughout the United States.

## RENT-A-TRIBE SCHEMES

46.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

47.     Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

48.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending

scheme; all substantive aspects of the payday lending operation—funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections—are performed by individuals and entities that are unaffiliated with the tribe.

49.      In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

50.      However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

51.      To determine if a particular entity is entitled to sovereign immunity, the  majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

52.      These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

53.      Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

54.      Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019)

(upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

55.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y.). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

56.     The excessive interest charges imposed by Defendants were intentional.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

57.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

58.     Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

59.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

60.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan]

-8-

Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

61.     Loans made by an unlicensed lender to an Illinois resident at an interest rate exceeding 9% violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

62.     Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

63.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.*, 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

64.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *See, e.g., In the Matter of Red Leaf Ventures, LLC,* No.

12 CC 569); *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

65.     The excessive interest charges imposed by Defendants were willful.

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

66.     Plaintiffs incorporate paragraphs 1-65.

67.     This claim is against all Defendants.

68.     There is a controversy between Plaintiffs and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs and the class members must repay the loans made to them.

69.     Declaratory relief will resolve such controversy.

70.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

71.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

72.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made by Strategic Solution Services (through any website) at more than 9% interest (c) which loan has not been paid in full.

73.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

74.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

75.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant

common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

76.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

77.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78.     Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

79.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

i.      Injunctive relief;

ii.     Declaratory relief;

iii.    Restitution of all amounts collected on the loans from members of the class;

iv.     Costs of suit; and

v.      Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

80.     Plaintiffs incorporate paragraphs 1-65.

81.     This claim is against all Defendants.

82.     Defendants contracted for and collected loans at more than 9% interest from Plaintiffs and the class members, in violation of 815 ILCS 205/4.

83.     Plaintiffs and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

84.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

85.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made by Strategic Solution Services (through any website) at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

86.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

87.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

88.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

89.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained  counsel experienced in class actions and consumer credit litigation.

90.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

91.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.      Individual actions are not economically feasible; and

    b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

    i.      Damages as provided in 815 ILCS 205/6.

    ii.     Attorney's fees, litigation expenses, and costs of suit; and

iii.     Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT
## AND ILLINOIS CONSUMER FRAUD ACT

92.     Plaintiffs incorporate paragraphs 1-65.

93.     This claim is against all Defendants.

94.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

95.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act. 815 ILCS 505/1 *et seq.*

## CLASS ALLEGATIONS

96.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

97.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made by Strategic Solution Services (through any website) at more than 36% interest (c) on or after March 23, 2021.

98.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

99.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

100.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

101.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained  counsel experienced in class actions and consumer credit litigation.

102. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

103. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible; and

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

    i. Compensatory damages;

    ii. Punitive damages;

    iii. Attorney's fees, litigation expenses, and costs of suit; and

    iv. Such other and further relief as the Court deems proper.

## COUNT IV – RICO

104. Plaintiffs incorporates paragraphs 1-65.

105. This claim is against Defendants Radiotis, NCR Financial Services, Inc., Finsana, LLC, and John Does 1-20, who are the RICO "persons."

106. All loans made by Strategic Solution Services (through any website) to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the loan was made on or after a date four years prior to the filing of this action, and (d) the usurious rate is at least twice the enforceable rate (9%).

107. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

108. Strategic Solution Services is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

109. Defendants Radiotis, NCR Financial Services, Inc.; Finsana, LLC, and John Does 1-20, are associated with this enterprise, in that they operate and manage it.

-14-

110.     Defendants conducted or participated in the conduct of the affairs of Strategic Solution Services through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

111.     Plaintiffs were deprived of money as a result.

## CLASS ALLEGATIONS

112.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

113.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made by Strategic Solution Services (through any website) at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of this action.

114.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

115.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

   a.     Whether the loans at issue are "unlawful debts" as defined in RICO;

   b.     Whether Strategic Solution Services is an "enterprise";

   c.     Whether the Defendants named herein are associated with Strategic Solution Services; and

   d.     Whether the Defendants named herein conducted or participated in the affairs of Strategic Solution Services through a pattern of making and collecting unlawful loans.

116.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

117.     Plaintiffs' claims are typical of the claims of the class members. All are based on the

-15-

same factual and legal theories.

118.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible; and

    b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

    i.    Treble damages;

    ii.    Attorney's fees, litigation expenses, and costs of suit; and

    iii.    Such other or further relief as the Court deems proper.

## COUNT V – RICO

119.    Plaintiffs incorporates paragraphs 1-65.

120.    This claim is against Defendants Radiotis, NCR Financial Services, Inc., Finsana, LLC, and John Does 1-20, who are the RICO "persons."

121.    All loans made by Strategic Solution Services (through any website) to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the loan was made on or after a date four years prior to the filing of this action, and (d) the usurious rate is at least twice the enforceable rate (9%).

122.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

123.    Strategic Solution Services is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

124.    Defendants Radiotis, NCR Financial Services, Inc.; Finsana, LLC, and John Does 1-20, conspired and agreed to operate by Strategic Solution Services  through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(d).

125.    Plaintiffs were deprived of money as a result.

## CLASS ALLEGATIONS

126.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

127.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made by Strategic Solution Services (through any website) at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of this action.

128.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

129.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

     a.     Whether the loans at issue are "unlawful debts" as defined in RICO;

     b.     Whether Strategic Solution Services is an "enterprise"; and

     c.     Whether the Defendants named herein agreed and conspired to make unlawful loans through by Strategic Solution Services.

130.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

131.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

132.     A class action is superior for the fair and efficient adjudication of this matter, in that:

     a.     Individual actions are not economically feasible.

     b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

     i.     Treble damages;

-17-

ii.    Attorney's fees, litigation expenses, and costs of suit; and

iii.   Such other or further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Dulijaza (Julie) Clark
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Dedelman@edcombs.com
tgoodwin@edcombs.com
Jclark@edcombs.com
ahuzyk@edcombs.com

## **JURY DEMAND**

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Each Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman